United States District Court
Southern District of Texas

**ENTERED**

October 05, 2017

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAMUEL HENDERSON, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-16-3174 |
| | § | |
| LORIE DAVIS, DIRECTOR, TEXAS | § | |
| DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's Motion for Summary Judgment (Document No. 14) against Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1). Having considered the motion, Petitioner's response, the claims raised by Petitioner in his § 2254 Application, Memorandum in support and "supplement," the state court records, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Respondent's Motion for Summary Judgment (Document No. 14) be GRANTED, and that Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) be DENIED and DISMISSED WITH PREJUDICE.

## I.    Introduction and Procedural History

Samuel Henderson ("Henderson") is currently incarcerated in Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), as a result of three 2011 felony convictions for burglary with intent to commit sexual assault in the 228th District Court of Harris County, Texas,

cause nos. 1315583, 1315584 and 1315585, for which he was sentenced to three, concurrent life sentences. Henderson was charged by indictments with those offenses, was found guilty by a jury of each offense, and was sentenced by the jury to life imprisonment on each offense on August 19, 2011.

Henderson appealed each conviction. On October 25, 2012, Texas' Fourteenth Court of Appeals affirmed the convictions in an unpublished opinion. *Henderson v. State*, Nos. 14-11-00727-CR, 14-11-00728-CR, 14-11-00729-CR.[1] Henderson filed a petition for discretionary, and three state applications for writ of habeas corpus. The petition for discretionary review was refused on March 6, 2013. The three state applications for writ of habeas corpus were denied by the Texas Court of Criminal Appeals on January 13, 2016, without written order. This § 2254 proceeding, filed by Henderson on or about October 20, 2016, followed.

Respondent has filed a Motion for Summary Judgment (Document No. 14), to which Henderson has filed a "Supplement," a Memorandum in Support of his Supplement, and a Traverse (Document Nos. 16, 17 and 20) in response. This § 2254 proceeding is ripe for ruling.

## II.    **Factual and Evidentiary Background**

The factual and evidentiary background, as set forth by Texas' Fourteenth Court of Appeals in affirming Henderson's convictions, is as follows:

> Henderson was indicted on three counts of burglary of a habitation with intent to commit sexual assault. Each complainant lived in the Texas Medical Center area when she was attacked, and the attacks all occurred within a four-month period in

---

[1] The state trial court ordered the three life sentences to run consecutive to each other. On appeal, upon the State's concession that the trial court "erroneously granted the State's request to stack his sentences," Texas' Fourteenth Court of Appeals modified the judgment to have the sentences run concurrently.

2009. A Combined DNA Index System (CODIS) "hit" identified Henderson as a potential suspect, and on March 7, 2010, he was questioned by the police. Henderson confessed to the three offenses. After his indictment, Henderson retained his trial counsel, Charles Brown.

On December 20, 2010, Brown signed a judgment with the State Bar of Texas to resolve complaints alleging deficient performance in several criminal cases. The judgment suspended Brown's law license from December 18, 2010 through December 18, 2013, but it was partially probated so that Brown was not authorized to practice law from December 18, 2010 through January 17, 2011. Henderson's trial took place in August 2011, eight months after Brown's active suspension ended.

Each of the three complainants, L.H., S.L., and L.B., testified at Henderson's trial. L.H. testified that in June 2009, a man broke into her apartment in the Medical Center, pinned her down, and sexually assaulted her. She was able to give police a description of her attacker and later identified Henderson from a police photo array, but she could not identify Henderson in court. S.L. testified that in October 2009, a man broke into her apartment in the Medical Center, punched and strangled her, and sexually assaulted her. S.L. testified that because the man had a stocking over his face the entire time, she was unable to identify him to police. Also in October 2009, L.B. was in her apartment getting ready for work one morning when a man broke in. L.B. struggled with the man, who hit her and tried to choke her as he attempted to sexually assault her. L.B. was unable to see the man's face during the attack.

Because each complainant provided a similar physical description of her attacker, police investigating the cases believed the three offenses were related. The police developed Henderson as a suspect based on the information from CODIS, and then brought him in for questioning. After an officer read Henderson his *Miranda* rights, he confessed to the three crimes and provided corroborating information. Other possible suspects that had been identified were ultimately ruled out. A DNA-testing specialist testified that Henderson could not be excluded as a contributor to the DNA saliva profile taken from S.L.'s left breast. A crime-scene investigator who searched Henderson's vehicle found screwdrivers, wire cutters, and pry bars inside, which he testified can be used as burglary tools.

Testifying in his defense, Henderson denied that he committed the offenses, and claimed that he only confessed because the officers were threatening to harass his family. According to Henderson he had decided to just tell the officers what they wanted to hear, knowing that "eventually [he] would get [his] chance to tell [his] side of the story."

The jury found Henderson guilty of the offenses charged and assessed punishment of life in prison and a $10,000 fine in each case. The trial court granted the State's motion to cumulate the sentences. Henderson filed a motion for new trial,

which was denied after a hearing.

*Henderson v. State*, Nos. 14-11-00727-CR, 14-11-0000728-CR, 14-11-00729-CR, at 2-3 (Document

No. 12-7 at 2-3).

### III.   <u>Claims</u>

Henderson raises two claims in his § 2254 application:

1.     that there was no evidence, or insufficient evidence to support his
       convictions; and

2.     that his trial counsel, Charles Brown, was ineffective for mentioning
       Henderson's prior criminal history during opening arguments and that he was
       effectively denied counsel given Brown's suspension by the Texas Bar.

Respondent argues in the Motion for Summary Judgment that Henderson's no

evidence/insufficient evidence claim is unsupported by any facts or argument, is procedurally barred

from review given Henderson's failure to raise a no evidence/insufficient evidence claim on direct

appeal, and that the claim has no substantive merit given Henderson's confession to police.  As for

the ineffectiveness claim, Respondent maintains that no relief is available on the claim because the

Texas courts rejected the claim on the merits, and that rejection was not contrary to, or based on an

unreasonable application of, clearly established federal law, as determined by the Supreme Court of

the United States.

### IV.   **Standards of Review**

#### A.     **Procedural Default/Bar of Insufficient Evidence Claims**

In Texas, insufficient evidence claims must be raised on direct appeal.  *Ex parte McLain*, 869

S.W.2d 349, 350 (Tex. Crim. App. 1994); *Clark v. Texas*, 788 F.2d 309, 310 (5th Cir. 1986); *Renz*

*v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994). When such claims are alleged for the first time in a state application for writ of habeas corpus, and the application is denied, such denial is to be strictly construed as a determination by the Texas Court of Criminal Appeals that such sufficiency of the evidence claims are not cognizable. *Ex Parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). Those same sufficiency of the evidence claims are then procedurally barred from review in a federal habeas corpus proceeding unless the habeas petitioner demonstrates cause for and prejudice resulting from the state law procedural default of the claim, or that he will suffer a fundamental miscarriage of justice if the claim is not reviewed. *Renz*, 28 F.3d at 432-33.

### B.    Merits Review Under § 2254(d)

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited. 28 U.S.C. § 2254(d) provides:

> (d)  An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.'" *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams*, 529 U.S. at 405-406). A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "State-court decisions are measured against [the Supreme Court's] precedents as of 'the time the state court renders its decision.'" *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1399 (2011) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)). Similarly, state court decisions are reviewed under § 2254(d) by reference to the facts that were before the state court at the time. *Id.* ("It would be strange to ask federal courts to analyze whether a state court adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.").

For factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 130 S.Ct. 841, 849 (2010). Instead, factual determinations made by state courts carry a presumption of correctness and federal courts on habeas review are bound by them unless there is clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000). *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002),

6

*cert. dism'd,* 541 U.S. 913 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786-787 (2011). Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford*, 537 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). This is true regardless of whether the state court rejected the claims summarily, or with a reasoned analysis. *Cullen*, 131 S.Ct. at 1402 ("Section 2254(d) applies even where there has been a summary denial."). Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) *only* in those situations "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Richter*, 131 S.Ct. at 786.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d). *Id.* ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable."). In addition, the correctness of the state court's decision is not determinative. As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been

7

more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted); *see also Price*, 538 U.S. at 641 ("'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'") (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)). Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004). A habeas petitioner can only overcome § 2254(d)'s bar "by showing that 'there was no reasonable basis'" for the state court's rejection of his claim(s). *Cullen*, 131 S.Ct. at 1402 (quoting *Richter*, 131 S.Ct. at 784)).

## V.   Discussion

### A.   No Evidence/Insufficient Evidence Claim

In his § 2254 application, Henderson maintained, without any supporting allegations or legal argument, that there was no evidence or insufficient evidence to support his convictions. Then in a "Supplement" (Document No. 16) and Memorandum Brief in support of his Supplement (Document No. 17), Henderson alleged for the first time that because there was no DNA evidence linking him to all three complainants (as opposed to just one of the complainants), and because none of the complainants could identify him in court, there was no evidence, or insufficient evidence to support his convictions. As argued by Respondent, however, Henderson did not raise a no evidence/insufficient evidence claim in his direct appeal, as he was required to do. In addition, as

8

argued by Respondent, the Texas Court of Criminal Appeals denied Henderson's § 2254 application without written order, with that denial being construed under state law as a determination that Henderson's no evidence/insufficient evidence was procedurally barred from review. *Grigsby*, 137 S.W.3d at 674 ("A challenge to the sufficiency of the evidence presents one of those instances where we can never consider the merits of the applicant's claim. Therefore, today, we reaffirm our holding that where an applicant challenges the sufficiency of the evidence on an application for a writ of habeas corpus, and we subsequently dispose of the application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable."). That state law procedural bar renders the claim procedurally barred from review in this § 2254 proceeding as well. *Renz*, 28 F.3d at 432. Moreover, because Henderson has not alleged cause and prejudice to overcome the procedural bar, and cannot, given the strength of the evidence against him, establish that he will suffer a fundamental miscarriage of justice if his no evidence/insufficient evidence claim is not considered on the merits, Henderson's no evidence/insufficient evidence claim must be dismissed as procedurally barred.

**B.    Ineffective Assistance of Counsel Claim**

In his second claim, which *was* raised by Henderson in his direct appeal, in his petition for discretionary review, and in his state application for writ of habeas corpus, Henderson maintains that his trial counsel, Charles Brown, was ineffective for revealing Henderson's prior criminal history during opening statements. According to Henderson, Charles Brown, who was under a term of suspension from the Texas State Bar in and around the time of his trial, revealed during open arguments Henderson's prior criminal history in a wholly unsupportable attempt to discredit the State's DNA evidence. The statements of Brown during open arguments that Henderson complains

9

of are as follows:

> No. 2 – and you have to understand the information I have to work with at this point is not totally complete. But I believe the evidence is going to show that what put them on the track of Mr. Henderson was an alleged rape in October of 2000 – of 1990. And they say that that was his DNA. And they used that as a CODIS hit to follow to him. The problem with that is that Mr. Henderson was incarcerated at that point in time. And obviously if he's incarcerated , he couldn't have been out and committing sexual assaults.

Reporter's Record, Vol. 3 at 13 (Document No. 12-10 at 13). Those statements, and that argument, Henderson argues, were objectively unreasonable given that he was not incarcerated in 1990 and counsel's reference to such as a basis for discrediting the State's DNA evidence was factually and patently unsupportable.

In rejecting Henderson's ineffectiveness claims on direct appeal, the Texas Court of Appeals first concluded that Henderson had not rebutted the "presumption that counsel's decisions were reasonable." The Court of Appeals then concluded that even if Brown's performance was deficient, Henderson had not shown that he was prejudiced thereby. In a Majority Opinion issued on October 25, 2012, the Court of Appeals wrote:

> An accused is entitled to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Bradley v. State*, 359 S.W.3d 912, 916 (Tex. App.–Houston [14th Dist.] 2012, pet. ref'd). In reviewing claims of ineffective assistance of counsel, we apply a two-prong test. *See Strickland*, 466 U.S. at 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that (1) his trial counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U.S. at 687; *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001). The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Thompson*, 9 S.W.3d at 813 (citing *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)).

> When evaluating a claim of ineffective assistance, the appellate court looks

to the totality of the representation and the particular circumstances of the case without the benefit of hindsight. *Lopez v. State*, 343 S.W.3d 137,143 (Tex. Crim. App. 2011); *Thompson*, 9 S.W.3d at 813. There is a strong presumption that trial counsel's actions and decisions were reasonably professional and were motivated by sound strategy. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). It is not sufficient that an appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. *Lopez*, 343 S.W.3d at 142-43. Instead, in order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record and the court must not engage in retrospective speculation. *Id.* at 142.

When direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Id.* at 143. Absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). When trial counsel has not had an opportunity to explain his or her actions or inactions, an appellate court cannot find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

If a criminal defendant can prove trial counsel's performance was deficient, he still must prove that he was prejudiced by his trial counsel's actions. *Thompson*, 9 S.W.3d at 812. This requires the defendant to demonstrate a reasonable probability that the result of the proceeding would have been different if the trial counsel had acted professionally. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Mallett*, 65 S.W.3d at 63.

In his first issue, Henderson contends Brown rendered ineffective assistance of counsel "by repeatedly speaking about two extraneous offenses whose introduction cannot be supported by any claim of trial strategy and was not supported by any investigation at all" in violation of the Sixth Amendment of the United States Constitution. During his opening statement, Brown argued that the evidence would show that Henderson only became a suspect because a DNA database linked his DNA to an alleged sexual assault from 1990, but because Henderson was incarcerated at the time of that sexual assault, it could not be his DNA, and therefore the same DNA erroneously made him a suspect in this case. But a police officer testified that, based on his review of Henderson's criminal-history records, Henderson was not incarcerated in 1990. On cross-examination, Henderson also testified that he was not incarcerated at the time of the 1990 sexual assault.

\* \* \*

The trial record reflects that Brown attempted to advance a strategy to

11

discredit what arguably could have been the most damaging evidence – the DNA evidence linking Henderson to one of the crimes. In hindsight, counsel's strategy appears unsound in light of the evidence adduced at trial; however, a reasonable strategic motivation can be gleaned from the record. *See Lopez*, 343 S.W.3d at 143. The record is silent concerning how counsel developed the strategy, what investigation he undertook in preparing the strategy, and whether and to what extent he discussed the strategy with his client. Henderson filed a motion for new trial, but ineffective assistance of counsel was not raised in the motion or during the hearing on the motion.

Ordinarily, counsel should be accorded an opportunity to explain his actions before being condemned as unprofessional and incompetent. *Bone*, 77 S.W.3d at 836. When counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct appeal. *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). In this case, it is possible that Brown's conduct could have been grounded in legitimate trial strategy, even if poorly executed. The possible existence of some legitimate trial strategy distinguishes this case from *Garcia*, in which the court concluded that no reasonable trial strategy could explain why defense counsel elicited damaging testimony from his client. *See Garcia*, 308 S.W.3d at 68-69. Absent any evidence from Brown explaining his actions, the record in this case is inadequate to review Henderson's claim of ineffectiveness. Henderson has therefore failed to rebut the presumption that counsel's decisions were reasonable. *See Lopez*, 343 S.W.3d at 143-44.

Even assuming Brown's conduct was deficient, the State argues that Henderson has not demonstrated that Brown's actions prejudiced him. The State points out that Henderson could not be excluded from the DNA evidence found on S.L. and he confessed to the three offenses, giving unique details of each offense to corroborate his confession.

Henderson contends, however, that a competent attorney would have explored defensive issues Brown did not, including L.H.'s failure to identify Henderson in court and Henderson's disavowal of his confession. However, L.H. testified at length and was cross-examined concerning the events leading up to the identification of her assailant. Even though L.H. did not recognize Henderson in court, L.H. testified that she recognized him "within 10 seconds" of viewing his picture in the photo array she was shown. She also worked with a police-department sketch artist shortly after the assault, and the sketch was admitted into evidence for the jury to compare to Henderson's appearance. Concerning Henderson's confession, he explained that he feared the police would send news reporters to his mother's house to harass his family. Henderson does not argue that his counsel should have attacked the

12

confession on some other basis.

Henderson also contends a competent attorney could have "explored the scientific data underpinning the DNA results" in S.L.'s case and developed reasonable doubt based on her inability to identify her assailant. Although S.L. testified that she was unable to identify her assailant because he wore a stocking over his face, Henderson points to nothing in the record that would cast doubt on the scientific underpinnings of the DNA evidence linking him to S.L. Thus, Henderson has failed to demonstrate a reasonable probability that the result of the proceeding would have been different if his trial counsel had acted professionally. We overrule Henderson's first issue.

*Henderson*, at 4-8 (Document No. 12-7).[2] The Texas Court of Appeals also concluded that Brown's

suspension "for one month, eight months before [Henderson's] trial" did not, in and of itself,

constitute deficient performance. *Id.* at 13-14. That adjudication by the Texas Court of Appeals on

the merits of Henderson's ineffectiveness claim(s) is not contrary to, or based on an unreasonable

application of, clearly established federal law.

The clearly established Federal Law applicable to claims of ineffective assistance of trial

counsel is contained in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme

Court determined that relief is available if a petitioner can show that his counsel was deficient and

that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id.* at 687.

Deficiency under *Strickland* is judged by an objective reasonableness standard, with great deference

given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The

prejudice element requires a petitioner to "show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be

---

[2] In a concurring opinion, Justice Adele Hedges specifically addressed Brown's performance, but concurred with the majority's decision that Brown's performance did not prejudice Henderson.

entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378; *Cullen*, 131 S.Ct. at 1403 ("[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result") (quoting *Strickland*, 466 U.S. at 686)). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

When an ineffective assistance of counsel claim has been adjudicated on the merits by the state courts, federal habeas review is "doubly deferential," with the court taking a "highly deferential look at counsel's performance" under *Strickland*, and then imposing a second layer of deference under § 2254(d). *Cullen*, 131 S.Ct. at 1403. Under § 2254(d), therefore, the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 131 S.Ct. at 788. As for *Strickland's* prejudice

prong, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 131 S.Ct. at 791. Instead, the question is whether "fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents. *Id.* at 786. If "'fairminded jurists could disagree' on the correctness of the state court's decision," § 2254(d)(1) precludes relief. *Id.* at 786. In contrast, where there is no "possibility that fairminded jurists could disagree" and fairminded jurists would uniformly conclude that the state court's decision is contrary to, or based on an unreasonable application of clearly established Federal law, relief is available under § 2254(d)(1). *Id.*

Here, given the significant evidence of Henderson's guilt – both in terms of the State's DNA evidence, and his video-taped confession to police, as well as the fact that Henderson's trial did not occur while Brown was under active suspension – fair minded jurists could not uniformly conclude the state courts' rejection of Henderson's ineffectiveness claim on the prejudice prong was contrary to, or based on an unreasonable application of, *Strickland*. As such, under § 2254(d), no relief is available to Henderson on the merits of his ineffectiveness claim(s).

## VII.   <u>Conclusion and Recommendation</u>

Based on the foregoing and the conclusion that no relief is available to Henderson on either of his claims, the Magistrate Judge

RECOMMENDS that Respondent's Motion for Summary Judgment (Document No. 14) be GRANTED, and that Petitioner Samuel Henderson's Federal Application for Writ of Habeas Corpus (Document No. 1) be DENIED and DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140, 144-145 (1985); *Ware v. King*, 694 F.2d 89, 91 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 5th day of October, 2017.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE